FILED:  September 24, 2019

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4660
(3:16-cr-00009-JAG-1)

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

JAMES WILLIAM HILL, III,

Defendant – Appellee.

------------------------------

MATTHEW SHEPARD FOUNDATION; FREESTATE JUSTICE, INC.; LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INCORPORATED; THE ANTI-DEFAMATION LEAGUE; TREVOR PROJECT; PUBLIC JUSTICE CENTER; JAPANESE AMERICAN CITIZENS LEAGUE,

Amici Supporting Appellant.

O R D E R

The petition for rehearing en banc was circulated to the full court.  No judge requested a poll under Fed. R. App. P. 35.  The court denies the petition for rehearing en banc.

For the Court

/s/ Patricia S. Connor, Clerk

Statement of Circuit Judge Agee respecting denial of petition for rehearing en banc:

To ensure that Congress' regulation of a noneconomic activity falls within its power to regulate "activities that substantially affect interstate commerce" under the Commerce Clause, *United States v. Lopez*, 514 U.S. 549, 559 (1995), and *United States v. Morrison*, 529 U.S. 598, 609 (2000), the Supreme Court should review this case. The issues here are of significant national importance and are best considered by the Supreme Court at the earliest possible date in order to address the essential jurisdictional question under the Commerce Clause.

This appeal arose from the Government's prosecution of James William Hill, III, under 18 U.S.C. § 249(a)(2)(B) after Hill punched his co-worker at an Amazon distribution facility. Hill's prosecution was the first in the country to rely on the so-called jurisdictional element contained in § 249(a)(2)(B)(iv)(I), which requires proof that the assault "interfere[d] with commercial or other economic activity in which the victim [was] engaged at the time of the conduct[.]"

The case presents a distinct vehicle to address a discrete question of law regarding the application of *Lopez* and *Morrison*. Those cases discussed the possibility that Congress' inclusion of a jurisdictional element could bring a regulated activity sufficiently within Congress' ability to regulate interstate commerce, but because the statutes at issue in those cases did not contain a jurisdictional element, neither case had occasion to discuss the matter with any specificity. Instead, they broadly discussed the need for a viable jurisdictional element to limit the statute's "reach to a discrete set of [regulated activities] that additionally have an explicit connection with or effect on *interstate* commerce." *Lopez*,

2

514 U.S. at 562 (emphasis added); *see also Morrison*, 529 U.S. at 613. In other words, the Supreme Court has held that when a jurisdictional element is the sole basis for concluding that a particular statute is constitutional, it must independently accomplish what nothing else in the statute does: compel the Court to conclude that the activity being regulated falls within Congress' Commerce Clause power.

In Hill's prosecution, the Government relied on just one of the available statutory subsections purporting to perform this critical function, and that element does not achieve its necessary purpose. Unique among the various subsections of § 249(a)(2), subsection (B)(iv)(I) is the only one devoid of any textual nexus to interstate or foreign commerce. *Compare* § 249(a)(2)(B)(iv)(I), *with* § 249(a)(2)(B)(i)–(iii) and (a)(2)(B)(iv)(II).[1] Every other subsection directly references interstate or foreign commerce, or otherwise plainly involves travel between the states. In contrast, subsection (B)(iv)(I) requires interference with only the victim's unrestricted "commercial or other economic activity." It thus fails to require that either the defendant or his victim were engaged in any sort of interstate or foreign activity at the time of the prohibited conduct.

This element is unusual, if not unique, within federal law in that it contains non-restrictive text describing the affected commercial or economic activity at issue, but is also the sole basis for ascribing the constitutionality of the statute. But because subsection (B)(iv)(I) does not limit its scope to interstate or foreign activity, it does not restrict

---

[1] For reasons known only to the Government, it struck from the indictment the language charging Hill under § 249(a)(2)(B)(iv)(II), that Hill's conduct "otherwise affect[ed] interstate . . . commerce."

3

§ 249(a)(2) to "activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 559; *Morrison*, 529 U.S. at 609. Put another way, by its plain terms, subsection (B)(iv)(I) does not require that the class of the victim's activities affects *interstate* or *foreign* commerce, nor does the statute otherwise limit the class of regulated activities to commerce over which Congress has authority. This disconnect renders a prosecution under this subsection outside the scope of Congress' Commerce Clause power, at least where the prosecution failed (as it did here) to demonstrate that the specific interference at issue substantially affected interstate commerce. Prosecutions under § 249(a)(2)(B)(iv)(I), including Hill's, are not limited to those over which Congress can validly exercise its Commerce Clause power due to being "sufficiently tied to interstate commerce [as opposed to regulating] a wider, and more purely intrastate body of violent crime." *Morrison*, 529 U.S. at 613.

Added to the broad statutory language and inherent disconnect with *Lopez* and *Morrison* is the concern about when the Government can rely on the aggregation of extraneous acts to reach the requisite connection to interstate commerce. When discussing the jurisdictional element, *Lopez* and *Morrison* indicated that such an element would provide the requisite connection to interstate commerce by "ensur[ing], through case-by-case inquiry, that the [activity being regulated] affects interstate commerce." *Lopez*, 514 U.S. at 561; *see Morrison*, 529 U.S. at 611–13. But in this case, the Government could not prove that Hill's act of punching his co-worker had *any* effect on interstate commerce. The panel majority in this case allowed the Government to satisfy its burden through aggregation of hypothetical acts. In so doing, it excused the Government from doing what

4

the Supreme Court said it must do. The Supreme Court has *never* authorized aggregation to satisfy the Commerce Clause's requirements where the root activity being regulated is noneconomic in nature. *See Morrison*, 529 U.S. at 617 ("reject[ing] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce"). Here, under the plain language of the statute, the root activity being regulated—bias-motivated assaults—is noneconomic, meaning that aggregation is not a permissible means of demonstrating the required connection to interstate commerce.

In the almost two decades since the Supreme Court opined on how a jurisdictional element could theoretically bring the regulation of noneconomic activity within Congress' Commerce Clause power, it has not applied the broad principles discussed in *Lopez* and *Morrison* to any specific statutory language. This case provides the clear opportunity for the Court to revisit those decisions and provide clarity and direction on an essential constitutional question. Given the number of ways in which the Court's decision in this case fails to adhere to the Supreme Court's holdings in *Lopez* and *Morrison* and the unusual statutory language Congress used in subsection (B)(iv)(I), this case is prime for Supreme Court review. Because the federal courts, Congress, and the public will be best served through the benefit of the Supreme Court's guidance without delay in this important area of constitutional law, I have decided not to pursue the intermediate step of requesting en banc review.